Upon review of the competent evidence of record and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At all relevant times, an employer-employee relationship existed between defendant-employer and the plaintiff.
3. Defendant is self-insured and the North Carolina Forestry Association Self-Insurance Fund is the Administering Agent.
4. The date giving rise to the alleged claim in this matter is 8 August 1995.
5. A Form 22 Wage Chart was submitted from which an average weekly wage can be determined.
6. Medical records and other documentation were stipulated into evidence as follows: 2 pages of medical documentation from Cabarrus Memorial Hospital; 10 pages of medical documentation from Cabarrus Physical Therapy, Inc.; 32 pages of documentation from Concord Family Physicians; 1 page of documentation from William O. Jolly, M.D.; 4 pages of documentation from Orthopedic Group of Concord; 4 pages of the plaintiff's responses to defendants' interrogatories; 2 pages of invoices for deliveries made by Mr. Bunton on 8 August 1995; Calendars and time sheets from Mr. Bunton regarding attendance and deliveries from 7 August 1995 through 8 September 1995; 21 pages of Mr. Bunton's recorded statement; and 43 pages of the plaintiff's employment file.
7. The issues before the Deputy Commissioner were whether plaintiff sustained an injury by accident or specific traumatic incident to his back on 8 August 1995, and, if so, what compensation, if any, is due plaintiff.
 *********** EVIDENTIARY RULINGS
The Full Commission adopts the evidentiary rulings of the Deputy Commissioner.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years old and had an eighth grade education.
2. Plaintiff began working for defendant-employer in January 1995. On 8 August 1995, plaintiff was preparing to transport a load of lumber. Plaintiff alleges that there was lumber in the front of the bed of the truck, a large gap of approximately ten feet in the middle where there was no lumber, and lumber positioned at the back. Before transporting the load of lumber, plaintiff contends that he needed to square the tarps over the lumber. Plaintiff claims that both tarps were placed at one end of the bed of the truck on top of the lumber. Plaintiff alleges that he had to roll one of tarps off the lumber and down into the gap. He further alleges that he then lifted the tarp up to place it on the other load.
3. Plaintiff estimated the tarp weighed approximately 100 to 200 pounds and that he experienced back pain when he lifted the tarp. Plaintiff contends that he was in severe pain and felt like a bolt of lightening struck him in the back and hip.
4. Plaintiff performed his normal job duties that day and informed Wayne Love, yard foreman, the next day of his injury. Plaintiff testified that he informed Sally Love, the company secretary, two days later and was referred to Dr. William O. Jolly.
5. There were no witnesses to corroborate plaintiff's account of his alleged injury.
6. Wayne Love stated that he was informed of plaintiff's alleged injury. However, Mr. Love questioned whether plaintiff actually had an on-the-job injury. Mr. Love has held a number of positions for the company, including truck dispatcher, yard foreman and truck driver. Mr. Love has been with defendant-employer for over twenty-three years and is familiar with the operations in the lumberyard as well as the trucks and tarps used to transport lumber.
7. The load that plaintiff transported on 8 August 1995 to Laurinburg was 32,764 total board feet and the load he delivered to Albemarle was 32,863 total board feet. Wayne Love indicated that these were very large loads that would have completely filled the truck and there would not have been any room for a gap between the lumber. Defendant-employer's policy since 1991 required the tarps to be positioned at each end of the truck bed.
8. Wayne Love's testimony was corroborated by James Barbee and James Ray Helms. Mr. Barbee has been a driver for defendant-employer for three years and Mr. Helms has been a driver for seven and a half years. Both of these employees were familiar with the positioning of the lumber in the trucks as well as placing tarps over the lumber. These employees were informed of the size of the load that plaintiff transported on 8 August 1995 as documented by the stipulated invoices and stated there would not have been any gap in the lumber. Mr. Barbee and Mr. Helms indicated that the tarps were always placed at opposite ends of the truck bed so that the employees would not have to lift the tarps. Employees simply have to roll or push the tarp over the lumber without any type of lifting. Neither Mr. Barbee nor Mr. Helms had ever known of any employee of defendant-employer being injured in the manner that plaintiff alleges.
9. Mr. Barbee and Mr. Helms estimated that the weight of the tarp is between 75 to 100 pounds.
10. Sally Love Smith, company secretary, saw employees on a daily basis as they handed in their log sheets and vehicle inspection sheets at the end of the day. At that time, the employees also received instructions about their job duties for the following day. Ms. Smith stated that she would have seen plaintiff on the date of the alleged injury and did not recall plaintiff's appearance being unusual. Ms. Smith was informed several days later of the alleged injury and referred plaintiff to Dr. William O. Jolly.
11. Plaintiff was examined by Dr. Jolly on 17 August 1995 and provided a history of lifting up a tarp and experiencing left sided lower back pain. Plaintiff returned to Dr. Jolly for a follow-up visit on 22 August 1995. Plaintiff failed to attend that second appointment and did not ever again request additional medical treatment during his employment with defendant-employer.
12. Plaintiff indicated that he informed Mr. Barbee and Mr. Helms of his injury and was in extreme pain during his final days with defendant-employer and often walked around bent over. However, Mr. Barbee and Mr. Helms testified that they were never informed of any back injury or back condition. During plaintiff's final weeks with defendant-employer, Mr. Barbee and Mr. Helms indicated that plaintiff looked normal and did not walk stooped or with a limp.
13. Following the alleged injury, plaintiff continued to work for defendant-employer for approximately one week and then quit his job allegedly due to back pain. Employment documentation indicates that plaintiff worked up until 8 September 1995 averaging approximately 47 hours per week. During that time, Mr. Love and Ms. Smith stated that plaintiff actually requested increased job duties as he needed additional funds for personal expenses.
14. Plaintiff performed his regular job duties during the last month of his employment with defendant-employer.
15. Mr. Love and Ms. Smith indicated that plaintiff ended his employment with defendant-employer stating that he obtained a job with another employer for higher wages.
16. At the time plaintiff ended his employment with defendant-employer, plaintiff did not mention his back problems or report that he was going to file a workers' compensation claim to Mr. Love or Ms. Smith.
17. The Deputy Commissioner found Mr. Love, Ms. Smith, Mr. Helms and Mr. Barbee to be credible. The Full Commission gives deference to the Deputy Commissioner's credibility assessments.
18. After leaving his job with defendant-employer, plaintiff was employed by P.R. Gibson as a driver. Plaintiff was not required to perform any lifting in this employment.
19. On 22 December 1995, plaintiff sought treatment from Dr. Hoffman, plaintiff's family doctor. Plaintiff indicated to Dr. Hoffman a history of several weeks of low back pain and did not report any injury or radicular symptoms. Plaintiff did not provide Dr. Hoffman with a history of a work-related injury occurring on 8 August 1995.
20. At the hearing before the Deputy Commissioner, plaintiff testified that he provided a work history to Dr. Hoffman and that Dr. Hoffman's medical records were not accurate. Later in the hearing, plaintiff recanted his statements and indicated that he did not remember what he said to Dr. Hoffman.
21. Dr. Hoffman referred plaintiff to Dr. Wassel who first examined plaintiff on 18 March 1996. Plaintiff provided a history of four to five months of lower back and extremity pain, particularly right lumbar pain. Plaintiff did not indicate to Dr. Wassel a specific history of trauma. During the course of the hearing before the Deputy Commissioner, plaintiff was questioned about the history contained in Dr. Wassel's records and he claimed that he informed Dr. Wassel of the on-the-job injury. Plaintiff claimed Dr. Wassel did not write it down.
22. Dr. Wassel testified that he always takes a thorough history from the patient and records this history at the time of the initial examination or shortly thereafter. He stated that plaintiff did not inform him of any on-the-job injury occurring at defendant-employer's business on 8 August 1995. Plaintiff filed for coverage of Dr. Wassel's treatment with his personal health insurance.
23. Plaintiff provided a history to Dr. Wassel of the onset of pain beginning either in November or December 1995 rather than on 8 August 1995.
24. Dr. Wassel determined that plaintiff had pain in the back and lower right extremity and ordered an MRI scan which showed a L4-5 herniated disc.
25. On 1 May 1996, Dr. Wassel performed a laminectomy discectomy. On 15 May 1996, plaintiff indicated that he was asymptomatic and was doing well without pain in his legs. Dr. Wassel recommended physical therapy sessions for the plaintiff which he duly underwent.
26. On 4 June 1996, Dr. Wassel released plaintiff to return to work. Dr. Wassel did not feel that plaintiff could perform long distance driving at that time but could perform short distance driving without any lifting.
27. Dr. Wassel opined that there are a number of factors that could cause a herniated disc and often one did not know what caused the disc injury. Dr. Wassel felt that there were a number of activities during an individual's daily living which placed an increased pressure on a disc including sitting, bending over and standing.
28. Dr. Wassel opined that he did not know what specific activity caused plaintiff's herniated disc.
29. Plaintiff obtained employment with Cardinal Freight on 14 June 1996 and worked for Cardinal Freight until 13 January 1997. This work did not require any lifting. Prior to beginning his employment with Cardinal Freight, plaintiff was required to take a physical examination which he passed. At the hearing before the Deputy Commissioner, plaintiff was unemployed but felt he could perform work.
30. Plaintiff failed to prove by the greater weight of the evidence that he suffered a work-related injury by accident or specific traumatic incident on 8 August 1995. The Deputy Commissioner found plaintiff's testimony not credible. The Full Commission gives deference to the Deputy Commissioner's credibility assessments. The testimony on Mr. Love, Ms. Smith, Mr. Barbee and Mr. Helms contradict plaintiff's testimony, and it is not likely that an injury could have occurred in the manner described by the plaintiff. Further, the greater weight of medical documentation does not corroborate plaintiff's version of the events.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or specific traumatic incident to his back arising out of or within the scope of his employment on 8 August 1995. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the Act. N.C. Gen. Stat. § 97-2(6).
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following:
 ORDER
1. Under the law, plaintiff's claim must be, and hereby is, DENIED.
2. Each side shall bear its own costs.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER